
**SO ORDERED.**

**SIGNED this 9th day of October, 2012.**



THOMAS W. WALDREP, JR.
UNITED STATES BANKRUPTCY JUDGE



_____

# UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### GREENSBORO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| MARY ANTONIA MAROTTA, | ) | Case No.12-10409 |
| | ) | |
| Debtor. | ) | Chapter 13 |
| _____ | ) | |
| IN RE: | ) | |
| WILLIAM KENNETH HALL, | ) | Case No.12-10446 |
| | ) | |
| Debtor. | ) | Chapter 13 |
| _____ | ) | |
| IN RE: | ) | |
| SHANTEIA LETRICE WARREN, | ) | Case No.12-10449 |
| | ) | |
| Debtor. | ) | Chapter 13 |
| _____ | ) | |
| IN RE: | ) | |
| LOUANNA H. BLACKMAN, | ) | Case No.12-10487 |
| | ) | |
| Debtor. | ) | Chapter 13 |
| _____ | ) | |
| IN RE: | ) | |
| HOLLY POCHIS OVERTON, | ) | Case No.12-10540 |
| | ) | |
| Debtor. | ) | Chapter 13 |
| _____ | ) | |
| IN RE: | ) | |
| MICHAEL WALLACE PETTIFORD, | ) | Case No.12-10552 |
| | ) | |

1

|  |  |  |
|---|---|---|
| Debtor. | ) | Chapter 13 |
| _____ | ) |  |
| IN RE: | ) |  |
| ANDREA VICTORIA PETTIFORD, | ) | Case No.12-10585 |
|  | ) |  |
| Debtor. | ) | Chapter 13 |
| _____ | ) |  |

|  |  |  |
|---|---|---|
| IN RE: | ) |  |
| GEORGE PENN GAITLING JR. and | ) |  |
| SHERITA WARREN GAITLING | ) | Case No.12-10608 |
|  | ) |  |
| Debtors. | ) | Chapter 13 |
| _____ | ) |  |
| IN RE: | ) |  |
| THOMAS RILEY SWEATT, | ) | Case No.12-10619 |
|  | ) |  |
| Debtor. | ) | Chapter 13 |
| _____ | ) |  |
| IN RE: | ) |  |
| NAKEISHA DENISE THORPE, | ) | Case No.12-10620 |
|  | ) |  |
| Debtor. | ) | Chapter 13 |
| _____ | ) |  |
| IN RE: | ) |  |
| ROY LEE NEWMAN and | ) |  |
| CYNTHIA KAY NEWMAN, | ) | Case No.12-10639 |
|  | ) |  |
| Debtors. | ) | Chapter 13 |
| _____ | ) |  |
| IN RE: | ) |  |
| ETHEL RENEE GRAVES, | ) | Case No.12-10663 |
|  | ) |  |
| Debtor. | ) | Chapter 13 |
| _____ | ) |  |
| IN RE: | ) |  |
| DAWN W. MARTIN, | ) | Case No.12-10685 |
|  | ) |  |
| Debtor. | ) | Chapter 13 |
| _____ | ) |  |

**MEMORANDUM OPINION**

At issue in these cases is the effect of a "no money down" arrangement between debtors and their attorneys under Chapter 13 of the Bankruptcy Code. In each of these thirteen cases, the parties entered into a fee arrangement in which the debtor paid nothing "up front" to file a Chapter 13 bankruptcy petition, and the debtor's attorney was obligated to pay certain prepetition fees, including the bankruptcy filing fee, when the case was filed. Under this arrangement, the filing fee and other fees would be repaid through the Chapter 13 plan, along with the standard $3,500.00 flat rate attorney fee in this District. Based on this arrangement, the United States Bankruptcy Administrator (the "Bankruptcy Administrator") and the Standing Chapter 13 Trustee (the "Trustee") filed objections to confirmation of the proposed plan in each case.

The Court held confirmation hearings in each of these cases on July 26, 2012, at which time the Court confirmed each plan, preserving the issues raised by the Bankruptcy Administrator's and Trustee's objections and taking them under advisement. The relevant facts of each case are similar or identical; therefore, the Court will address all thirteen cases together in this consolidated opinion and enter a separate order in each case.

**I. FACTS**

Beginning on July 5, 2011, the website of The Law Offices of John T. Orcutt P.C. ("Orcutt") advertised a "$0 Money-Down Bankruptcy" to "qualified" clients. Ex. 1. The Orcutt website, in both written statements and video ads, offered to advance the court costs related to filing for bankruptcy. See The Law Offices of John T. Orcutt website, available at

3

http://www.billsbills.com/introducing-o-money-down-bankruptcy. The website specifically provides that Orcutt will "advance" the filing fee and other fees, and it defines "advance" as "'pay on [the client's] behalf'." Ex. 1. The website footnotes that "Costs advanced will be added to the Chapter 13 plan for reimbursement." Ex. 1.

Clients seeking bankruptcy assistance entered into contracts with Orcutt, which charged them a flat fee for legal services. The contracts provide that, in addition to listed legal services, the flat fee included the costs of the filing fee, credit reports, the pre-filing "online" credit counseling certification, and PACER access, all of which are expenses generally paid by debtors before filing the bankruptcy petition. See Ex. 2. As a result, the flat fee in the contract, which varied in amount among the debtors, reflected the standard legal fee plus an additional $335.00 in other fees.

Moments after filing a Chapter 13 petition on behalf of each debtor, Orcutt filed an Amended Disclosure of Compensation of Attorney for the Debtor. Each disclosure states that Orcutt agrees to accept the standard fee for legal services plus additional "unreimbursed necessary expenses I advanced on behalf of the debtor" and lists the various fees included in the "flat fee." Amended Disclosure of Compensation of Attorney for Debtor at ¶ 1.[1] The disclosure also lists, as one of the legal services rendered in exchange for the requested fee, "[p]ayment, on behalf of the Debtor, of necessary expenses" and specifically includes the above-mentioned fees. Amended Disclosure of Compensation of Attorney for Debtor at ¶ 6.e. Additionally, some, but not all, of the debtors' petitions list Orcutt on Schedule E as a creditor holding an unsecured administrative expense priority claim for the full amount of the contractual "flat fee."

---

[1] The listed fees include the $281 filing fee, a $34 credit counseling certification fee, a $10 credit report fee, and a $10 judgment search fee.

4

On July 26, 2102, the Court held a hearing on the matter. At the hearing, the Bankruptcy Administrator made seven arguments against the practice of advancing fees to clients: (1) the advance is essentially a loan to the client that represents prepetition debt and should be a prepetition unsecured claim; (2) the unsecured claim, which is classified as an administrative priority claim in the debtors' schedules, is not an administrative claim under Section 330(a)(4)(B); (3) classifying the prepetition loan as an administrative claim violates Section 1322 as an impermissible classification; (4) the firm's practice of extending credit to its clients constitutes advice to incur debt in violation of Section 526(a)(4); (5) the advance is neither reasonable nor necessary under Section 330; (6) the practice of extending credit is against public policy because it damages the bankruptcy system as a whole, helps the Orcutt firm to the detriment of unsecured creditors, puts Chapter 7 debtors into Chapter 13 cases, and is an indicia of a bad faith filing; and (7) the practice of advancing fees poses ethical issues because making loans to clients violates North Carolina Rules of Professional Conduct 1.7 and 1.8. Hr'g 2:23:29 - 2:36:45.

The Trustee joined the Bankruptcy Administrator's arguments and emphasized that the basis for her objection to confirmation was that the practice of advancing filing costs to the debtor transforms the attorney into a creditor. Furthermore, the Trustee argued that the claim is not an administrative expense but rather an unsecured claim classified as an administrative expense, which violates Section 1322 by unfairly discriminating against other unsecured creditors. The Trustee agreed with the Bankruptcy Administrator's remaining concerns. H'rg 2:37:04 - 2:39:30

In response, Orcutt argued that the issue turns on whether the advancement is a loan, which would determine whether it is unsecured debt or an administrative claim. If the

5

advancement is an unsecured debt, then the scope of the matters before the Court is much narrower because no issues arise regarding unfair classification, harm to unsecured creditors, or ethics. Orcutt further argued that the firm's practice of advancing fees simultaneously benefits debtors and the Court: Orcutt's advancements allow the repayment of the fee to be spread out over the life of the plan, while shifting the burden of nonpayment of the filing fee from the Court to the law firm. Orcutt also argued that the fee arrangement benefits the estate insofar as it improves the debtor's cash flow during the early months of a bankruptcy, when debtors most critically need the money. Finally, Orcutt argued that the arrangement serves to increase access to bankruptcy services because putative clients do not need to save money for the filing fee before seeking bankruptcy relief.

## II. JURISDICTION

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157 and 1334, and Local Rule 83.11 of the United States District Court for the Middle District of North Carolina.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), which this Court has the jurisdiction to hear and determine.  Pursuant to the analysis in Stern v. Marshall, 564 U.S. --, 131 S. Ct. 2594 (2011), the Court may enter a final order in this matter.

## III. DISCUSSION

**I. Advances made by Orcutt to his clients are loans**.

Black's Law Dictionary defines an "advance" as "[m]oney paid before or in advance of the proper time of payment; ... a loan or gift, or money advanced to be repaid conditionally." Black's Law Dictionary (9th ed. 2009).  Similarly, the Oxford English Dictionary defines

6

"advance" as "an amount of money paid before it is due" and "loan" as "a thing that is borrowed, especially a sum of money that is expected to be paid back with interest." Oxford English Dictionary (2d ed. 1989). Though slightly different in form, the two definitions are identical in substance: both terms involve the temporary provision of some thing with the expectation that it will be returned. See also Laurens Fed. Sav. & Loan Ass'n v. S.C. Tax Comm'n, 365 U.S. 517, 521 (1961) (explaining that the terms "loans" and "advances" are synonymous).

Although the law does not explicitly define what constitutes an "advance," many courts have interpreted it to include an expectation of repayment. See City of Detroit v. Murray Corp. of Am., 355 U.S. 489, 517 n.4 (1958) ("It has long been recognized and understood that an 'advance payment' is a loan"); Boccardo v. C.I.R., 56 F.3d 1016, 1018 (9th Cir. 1995) (noting that the label of "advances" can imply "loans"); Burnett v. C.I.R., 356 F.2d 755, 760 (5th Cir. 1966) (finding that conditional "advances were intended to, and did, operate as loans" where there was an expectation that the disbursement would be substantially repaid). A "no money down" offer is characteristic of an advance because it anticipates that the money that is provided up front will simply be repaid at a later date. See, e.g. United States v. Hauck, 980 F.2d 611, 612-13 (10th Cir. 1992) (explaining a defendant's "'no-money-down' schemes" which included the defendant co-investing with buyers and supplying the down payment in order to sell homes); Leathermon v. Grandview Mem'l Gardens, Inc., 2010 WL 1381893, at *2 (S.D. Ind. Mar. 31, 2010) (explaining a "no money down" arrangement that required monthly payments and a final balloon payment of the remainder of the purchase price); Bro-Tech Corp. v. Purity Water Co. Of San Antonio, Inc., 681 F. Supp.2d 791, 794 (W.D. Tex. 2010) ("no money down" arrangement requiring payment of the full purchase price of goods after shipment).

An expectation of repayment is not inherent in every advance, however. See, e.g.,

7

Boccardo, 56 F.3d at 1018 (law firm's "net fee contract" agreed to pay all costs and provided that there would be no reimbursement if there was no recovery in the lawsuit). Thus, the court must determine whether an advance operates in fact as a loan. See Estate of Hoffman v. Comm'r of Internal Revenue, 8 Fed. Appx. 262, 266 (4th Cir. 2001) ("Whether the advances were loans is a factual issue"). In making such a determination, courts have considered factors including the intent of the parties and the reasonable expectation of repayment at the time of the advance. Adelson v. United States, 737 F.2d 1568, 1572 (D.C. Cir. 1984).

Looking first to the intent of the parties, there is little question that the advances were intended as loans. Orcutt's website explicitly states that the advanced costs would be reimbursed in the Chapter 13 plan. Ex. 1. Additionally, at the hearing, Orcutt admitted that "an advance is the . . . payment of a fee or cost on behalf of the debtor with an expectation . . . that the debtor would repay that during the course of a chapter 13 plan." Hr'g 5:30:51 - 5:30:04.

The reasonable expectation of the parties at the time of the advances was that the advances were to be repaid. The terms of the contract as well as the online advertisements evidence an expectation that the advances would be repaid through the debtors' Chapter 13 plans.[2] This expectation is further supported by the application for compensation filed contemporaneously with the petition. Accordingly, on these facts, the Court concludes that the advances made to the debtors were loans.

**II. Orcutt is a prepetition creditor of his debtor clients, and each advance is a claim pursuant to Section 101(5)(A) at the time that the contract is signed.**

Section 301 of the Bankruptcy Code provides that a voluntary bankruptcy case is

---

[2]"Costs advanced will be added to the Chapter 13 plan for reimbursement." Ex. 1. "The rest of the total flat fee shall be paid out of Client's Chapter 13 plan." Ex. 2.

8

commenced by filing a petition with the bankruptcy court. 11 U.S.C. § 301(a). A bankruptcy petition must be accompanied by the statutorily prescribed filing fee unless it is accompanied by an application for either permission to make installment payments or waiver of fees. Fed. R. Bankr. P. 1006.  If a petition is filed without payment of the filing fee or the application, the petition will be dismissed without a hearing.  L.B.R. 1002-1.

To file a bankruptcy petition using the CM/ECF system, this Court requires payment of fees by credit card.  Procedurally, to commence a bankruptcy case, one must log in to CM/ECF, complete the required information, and, immediately prior to submitting the petition, verify the filing fee with the option of requesting a receipt.[3] To do so requires an agreement to pay the filing fee before filing the petition. Once the petition is filed, the provisions of the Bankruptcy Code become effective as to the debtor and its creditors.

The Bankruptcy Code provides for different treatment of prepetition debt than post-petition debt, so it is important to determine the nature of Orcutt's advance.  "A debt can be absolutely owing prepetition even though that debt would never have come into existence except for postpetition events." Walton v. Clark & Washington, P.C., 454 B.R. 537, 542 (Bankr. M.D. Fla. 2011) (quoting In re Griffin, 313 B.R. 757, 763 n.4 (Bankr. N.D. Ill. 2004) (citing Sherman v. First City Bank of Dallas (In re United Scis. Of Am., Inc.), 893 F.2d 720, 724 (5th Cir. 1990))).  Thus, with respect to fees for services, even though the services occurred post-petition, the obligation to pay the fees for those services may have arisen prepetition. Ryker v. Current, 338 B.R. 642, 653 (D.N.J. 2006) (citing Blair v. Bank One, N.A., 307 B.R. 906, 911 (N.D. Ill. 2004), abrogated on other grounds by Costello v. Grundon, 651 F.3d 614 (2011).  In Chapter 7

---

[3] See U.S. Bankruptcy Court for the Middle District of North Carolina Online Attorney's Manual, available at http://www.ncmb.uscourts.gov/content/case-opening.

cases, courts have held that an engagement contract providing for a flat fee creates a prepetition obligation for a lump sum. Walton, 454 B.R. at 542; In re Lawson, 437 B.R. 609, 674 (Bankr. E.D. Tenn. 2010) (holding that to be a true "straddle" fee arrangement, a contract must clearly identify what services are included in a post-petition fee and what are included in the prepetition fee and that prepetition fees must be paid before filing). Accordingly, an obligation under a flat or fixed fee agreement with an attorney is a prepetition debt. In re Mansfield, 394 B.R. 783, 794 (Bankr. E.D. Pa. 2008).

The Bankruptcy Code defines a claim as "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(5)(A). The Code defines a creditor as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). Thus, if "a creditor's right to payment for fees exists pre-petition, the right to payment constitutes a 'claim' within the meaning of § 101(5)(A)." In re New Power Co., 313 B.R. 496, 508 (Bankr. N.D. Ga. 2004).

The Bankruptcy Administrator argued that the obligation to make the advance existed before the petition was filed. Conversely, Orcutt argued that the filing fee was advanced moments after the filing because the charge does not "appear" on the firm's credit card account until a few seconds after the filing. Notably, the fees for the credit reports and the online credit counseling certification were unquestionably advanced by Orcutt prepetition, as the reports were used to complete the petition and the certifications submitted contemporaneously with the petition pre-date the filing. This type of arrangement has been held to create a prepetition

10

obligation in Chapter 7 cases[4] and no provision of the Code suggests that such an arrangement should be treated differently in Chapter 13 cases. Accordingly, the obligation to pay the advances, and the entire flat fee, was incurred prepetition. The contract provides Orcutt with the immediate right to payment of the flat fee.[5] Therefore, based on Orcutt's right to payment, Orcutt holds a prepetition claim against the debtor for, at a minimum, the advances made.

**III. The advance of the filing fee is not recoverable by Orcutt under Section 330(a)(4)(B)**.

Attorneys who represent individual debtors in a Chapter 13 proceeding have an administrative claim against the estate for their pre-petition bankruptcy services pursuant to Section 330(a)(4)(B) and Section 503(b)(2). In re Seek Wilderness, Ltd., 368 B.R. 640, 645

---

[4]In re Biggar, 185 B.R. 825, 829 (N.D. Cal. 1995) (holding that prepetition attorneys' fees agreements are dischargeable in Chapter 7 "just as any other pre-petition debt or claim is dischargeable."); Walton v. Clark & Washington, 454 B.R. 357, 342 (Bankr. M.D. Fla. 2011) (holding that "a postdated check -- like a promissory note -- really is nothing more than a promise to pay a certain sum of money at a specified time. For that reason, a post-dated check is a 'claim' under § 101(5)); In re Lawson, 437 B.R. at 665; In re Waldo, 417 B.R. 854, 883 (Bankr. E.D. Tenn. 2009) (holding that "[a] claim is a prepetition "claim" . . . if there was a relationship, existing prepetition, between the debtor and the creditor such that the creditor could fairly contemplate the possibility of a claim against the debtor's bankruptcy estate at the time that the bankruptcy petition was filed. . . [Moreover,] contracts are to be construed as of the date they are made and cannot be based upon events occurring subsequent to execution); In re Nieves, 246 B.R. 866 (Bankr. E.D. Wis. 2000) (declining to create an exception to discharge for prepetition Chapter 7 attorneys' fee "no money down" claims).

[5]The second paragraph of the contract, titled Client Authorization for Legal Services Chapter 13 Case, states "Client agrees that Attorney shall be paid and immediately entitled to the total flat fee of $3,835.00." Ex. 2 (emphasis added). The third paragraph provides, "This fee includes the $281.00 filing fee required by the Court." Id. (emphasis in original). The obligation of the debtor to repay Orcutt arose prepetition, regardless of when repayment was due or made. See In re Lawson, 437 B.R. at 665 ("[E]ach of the Engagement Contracts in these fifteen cases was entered into pre-petition, as was the obligation for payment."); In re Dornier Aviation (N. Am.), Inc., 2002 WL 31999222 (Bankr. E.D. Va. 2002) (claim for severance pay was pursuant to a prepetition contract, so the claim is an unsecured claim and paid with other unsecured claims).

11

(Bankr. W.D. Mich. 2007). A debtor's attorney may be paid by the estate in a Chapter 13 pursuant to Section 330(a)(4)(B). In re Young, 286 B.R. 168, 171 (Bankr. D. Md. 2002). Section 330(a)(4)(B), in relevant part, provides,

> In a . . . chapter 13 case . . . the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

11 U.S.C. § 330(a)(4)(B). Section 330(a)(4)(B) is silent as to the reimbursement of expenses.

Interpretation of a statute starts with the plain meaning of the text of that statute. United States v. Wright, 625 F.3d 583, 591 (9th Cir. 2010). "Courts must presume that a legislature says in a statute what it means and means in a statute what it says there." Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). See also Lamie v. U.S. Trustee, 540 U.S. 526, 533 124 S. Ct. 1023, 1030 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.") (internal quotation omitted) (interpreting § 330 of the Bankruptcy Code).

The Oxford English Dictionary defines "compensation" as "salary or wages; payment for services rendered." Oxford English Dictionary (2d ed. 1989) "Reimbursement" is defined as "repayment." Id. Although "compensation" may encompass reimbursement for expenses in other contexts, the plain meaning of the statute suggests that Congress did not intend reimbursement of attorney expenses under Section 330(a)(4)(B) ("reasonable compensation") as it did under Section 330(a)(1) ("reasonable compensation . . . and reimbursement for actual, necessary expenses"). The use of the word "reimbursement" in a neighboring paragraph

12

suggests that Congress indeed meant the plain, dictionary definition of "compensation" in Section 330(a)(4)(B). The "commonsense canon of noscitur a sociis" counsels that a word is given "more precise content by the neighboring words with which it is associated." United States v. Williams, 553 U.S. 285, 294 (2008) (citing 2A Sutherland Statutes and Statutory Construction § 47.16 (7th ed. 2007)). Applying this canon, the Court determines that the narrow, plain meaning of the word "compensation" to mean payment for services, rather than reimbursement for expenses.

Despite the absence of a clear statutory basis for awarding expenses to Chapter 13 debtor's attorneys under Section 330(a)(4)(B), some courts have allowed the reimbursement of expenses under the section. See, e.g., In re Pastran, 462 B.R. 201, 213 (Bankr. N.D. Tex. 2011) (considering whether "the requested fees and expenses pass muster under Section 330(a)(4)(B)," and concluding yes); In re Williams, 384 B.R. 191, 194 (Bankr. N.D. Ohio 2007) ("[A]n attorney . . . who seeks to be paid her legal fees through a debtor's Chapter 13 plan of reorganization is subject to § 330(a)(4)(B). . . This section provides generally that, in a Chapter 12 or 13 case, a court may award fees and expenses to an attorney 'for representing interests of the debtor in connection with the bankruptcy case.' Fees awarded under this are then paid from the estate as an administrative expense. 11 U.S.C. 503(b)(2)."). In each of these cases, however, the court assumed, without discussion, that expenses may be reimbursed under Section 330(a)(4)(B).

Conventional rules of statutory construction dictate that the plain meaning of a statute control. The definition of the word "compensation" and absence of "reimbursement" in Section

13

330(a)(4)(B) eliminates any basis for reimbursing attorney expenses under the section.[6]

## IV. The advance, even if an administrative claim, is not "actual and necessary" as required by Section 503(b)(1)(A).

Orcutt argues that his claim for reimbursement of fees is an administrative expense. The Bankruptcy Code provides that administrative expenses--"the actual, necessary costs and expenses of preserving the estate"--"are, as a rule, entitled to priority over prepetition unsecured claims." Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 5, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). A bankruptcy court has broad discretion to determine whether to grant administrative claims. In re Dant & Russell, Inc., 853 F.2d 700, 706 (9th Cir. 1988). In order to keep administrative costs to the estate at a minimum, "the actual, necessary costs and expenses of preserving the estate" are construed narrowly. In re Palau, 139 Bankr. 942, 944 (B.A.P. 9th Cir. 1992), aff'd, 18 F.3d 746 (9th Cir. 1994); In re Federated Dept. Stores, Inc., 270 F.3d 994, 1000 (6th Cir.2001) ("[C]laims for administrative expenses under § 503(b) are strictly construed because priority claims reduce the funds available for creditors and other claimants.").

To receive administrative expense priority under Section 503(b)(1)(A), the claim must arise from a transaction with the bankruptcy estate, and have directly and substantially benefitted

---

[6]Orcutt might have argued that Section 507(a)(2) provides a second priority claim for "administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28," including any filing and bankruptcy fees payable pursuant to Section 1930 of Title 28 of the United States Code. Section 1326(b)(1) of the Bankruptcy Code provides that "any unpaid claim of the kind specified in 507(a)(1) [now 507(a)(2)]" shall be paid "[b]efore or at the time of each payment to creditors under the plan." In this context, "claim" in Section 1326(b)(1) is reasonably interpreted to include filing fees listed in Section 507(a)(2). 2 Keith M. Lundin, Chapter 13 Bankruptcy 3d Edition, § 100.5 at 100-13. Section 1326(b)(1) creates a priority right to payment for unpaid claims of fees. This argument fails, however, because Orcutt already paid the filing fee, so there is no outstanding claim for the fee, as required by Section 1326(b)(1).

14

the estate. See, e.g., In re Eagle-Picher Indus., Inc., 447 F.3d 461 (6th Cir. 2006); Pension Benefit Guar. Corp. v. Sunarhauserman, Inc. (In re Sunarhauserman, Inc.), 126 F.3d 811, 816 (6th Cir. 1997): Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.), 66 F.3d 1091, 1094 (9th Cir. 1995). A bankruptcy estate does not exist until the petition is filed. 11 U.S.C. § 541. Accordingly, for a claim to be allowed as an administrative expense, goods or services must be delivered or provided pursuant to a post-petition transaction; it is not enough that payment becomes due after the petition date if the transaction was entered into with the debtor prepetition. In re Nat'l Steel Corp, 316 B.R. 287, 300 (Bankr. N.D. Ill. 2004). The requirement that an administrative expense "benefit" the estate, although not expressly found in the statute, continues a standard found in pre-Code case law interpreting the predecessor to Section 503(b)(1)(A). 1-503 Collier Bankruptcy Manual, 3d Edition Revised ¶ 503.06. See also Trustees of Amalgamated Ins. Fund v. McFarlin's, 789 F.2d 98, 101 n.1 (2d Cir. 1986) (noting that § 503(b)(1)(A) was derived from § 64a(1) of the Bankruptcy Act and is similar enough in language that judicial interpretations of the Act remain relevant). "The 'benefit' analysis is a way of testing whether a particular expense was 'necessary' to preserve the estate." In re REFCO, Inc., 2008 WL 140956, at *6 n. 11 (S.D.N.Y. Jan. 14, 2008) (quoting 4 Collier on Bankruptcy ¶ 503.06[3][b]).

The advance of the filing fee is not an "actual, necessary" expense because it does not arise from a transaction with the bankruptcy estate. For the reasons previously discussed, Orcutt holds a prepetition claim for the advancement of the fees because the obligation to repay the advance was incurred prepetition when the debtor and Orcutt executed the attorney fee agreement. Because Orcutt entered the agreements with his clients prepetition, the claim may not be allowed as an administrative expense. Furthermore, the advance of the filing fee has no

15

direct and substantial benefit to the estate. Indeed, the "no money down" arrangement seems to harm unsecured creditors in "pot plans"[7] because some of the funds that the debtor pays into the plan will go to Orcutt as an administrative expense rather than all funds going to unsecured creditors. The arrangement principally benefits Orcutt because it allows him to seemingly offer a service to potential clients that other attorneys do not: the ability to file Chapter 13 with no money out of pocket. If a creditor incurs an expense primarily to protect its own interest, the expense is not entitled to an administrative priority. Matter of Patch Graphics, 58 B.R. 743 (Bankr. W.D. Wis. 1986); In re O. P. M. Leasing Servs., Inc., 23 B.R. 104, 34 U.C.C. Rep. Serv. 1656 (Bankr. S.D.N.Y. 1982). See also 3 Norton Bankr. L. & Prac. 3d § 49:19. The Court concludes that the "$0 Money-Down Bankruptcy" arrangement operates primarily to promote Orcutt's marketing and other economic interests, rather than those of the estate. The fee is not an administrative expense.

Rule 1006, which permits a debtor to pay the filing fee in installments, provides a remedy for debtors who are unable to pay the full filing fee on the petition date. Fed. R. Bankr. P. 1006(b)(2). "[W]hen the Bankruptcy Code and the applicable rules of procedure already provide an answer to a particular problem, the court should not disregard that solution and use its equitable powers to create alternative remedies." In re Taylor, 289 B.R. 379, 389 (Bankr. N.D. Ind. 2003). Given that Rule 1006 clearly provides a procedure for assisting debtors who cannot afford to pay the filing fee in full on the date of filing, the Court finds that the remedy provided

---

[7]In a "pot plan," the total amount that the debtor will pay is established at confirmation. H'rg 3:40:10.

in the Code through Rule 1006 is exclusive.[8]

## V. Paying the advance, which is an unsecured claim, as part of Orcutt's fees constitutes an impermissible classification pursuant to Section 1322(a)(3).

The Bankruptcy Code permits a Chapter 13 plan to group substantially similar claims within the same class. 11 U.S.C. § 1322. A plan that classifies claims must provide the same treatment for each claim within a particular class. 11 U.S.C. § 1322(a)(3). Although the Code does not prohibit a debtor from separately classifying similar claims, a debtor may not "discriminate unfairly" among the similar separate classes. In re Abaunza, 452 B.R. 866, 870 (Bankr. S.D. Fla. 2011). Because the Bankruptcy Code does not define "unfair discrimination," courts have developed various tests that analyze the appropriateness of the different treatment against its necessity to carry out a plan. Id. (citing 6 A.L.R Fed. 2d 507 for a thorough discussion of the various tests). "Discrimination between classes of unsecured claims generally takes the form of a difference in the percentage of payment or the order of distribution." In re Williams, 253 B.R. 220, 224 (Bankr. W.D. Tenn 2000). Improperly classifying an unsecured claim violates Section 1322(a)(3). In the Matter of Maddox, 15 F.3d. 1347, 1356 (5th Cir. 1994) (concluding that incorrectly classifying an unsecured claim as a secured claim is treatment unlike other unsecured claims); In re Jackson, 189 B.R. 206 (Bankr. M.D. Ala. 1994) (finding a priority tax claim by the IRS that included an unsecured portion violated § 1322(a)(2) even though the plan provided for payment in full of unsecured claims). But see Bank One, NA v. Leuellen, 322 B.R. 648, 658 (S.D. Ind. 2005) (holding that treating separately classified secured claims

---

[8]This ruling makes it unnecessary to address the argument of the Bankruptcy Administrator and the Chapter 13 Trustee that "no money down" plans are contrary to public policy.

17

differently does not violate § 1322(a)(3)); In re Whitfield, 290 B.R. 302 (Bankr. E.D. Mich. 2003) (same).

Here, because the prepetition advance constitutes an unsecured claim, classifying it as an administrative priority expense discriminates unfairly against similar unsecured claims. First, by classifying the claim as an administrative priority expense, the claim will likely be substantially paid, if not paid in full, while a majority of the debtors' plans provide for no distribution to the unsecured creditors.[9] Moreover, as the Code provides for payment of administrative priority expenses before any distribution to unsecured creditors, such classification runs afoul of the statutorily prescribed distribution order. Accordingly, classifying the unsecured prepetition advance claim as an administrative priority expense claim violates Section 1322(a)(3).

**VI. The remaining issues need not be addressed**.

### 1. Does Orcutt's advice to debtors violate Section 526(a)(4)?

The Bankruptcy Administrator argues that Orcutt's advice to debtors that they incur a liability for the filing fee in contemplation of bankruptcy violates Section 526(a)(4) of the Bankruptcy Code. Section 526 prohibits a debt relief agency from advising "an assisted person or prospective assisted person to incur more debt in contemplation of such person filing a case under this title or to pay an attorney or bankruptcy petition preparer a fee or charge for services performed as part of preparing for or representing a debtor in a case under this title." 11 U.S.C.

---

[9] The plan in one of these cases, Michael Pettiford 12-10552, provides for a 100 percent dividend to unsecured creditors. However, the Trustee asserts that the 100 percent dividend is only an estimated event and in reality, unsecured creditors might not be paid in full. The projected dividend in all of the other cases is 0 percent.

§ 526(a)(4). Presently, the concerning issue is the attorney acting as a lender rather than as an advisor. No evidence was offered as to whether any of the debtors were advised that they were incurring further debt when they entered into their attorney fee agreement with Orcutt. Thus, because this issue was not developed at the hearing, the Court declines to rule on it.

**2. Does Orcutt's practice of advancing the filing fee to a debtor create a conflict of interest between Orcutt and the debtor?**

The Bankruptcy Administrator and the Trustee argue that Orcutt's practice of advancing fees to debtor clients violates Rules 1.7 and 1.8 of the North Carolina Rules of Professional Conduct. By advancing fees to clients, they argue, Orcutt becomes a creditor of his client, which creates a conflict of interest. The Court need not address this issue because Orcutt stated at the hearing that if the Court finds that the obligation to repay the fees is an unsecured claim, then Orcutt will waive the fees, thereby eliminating any conflict of interest. H'rg 4:28:12 - 4:28:28 ("If the Court found that we were just a general unsecured claim we would in fact file a waiver of such fee, if that was necessary, so that to avoid any problem with the Court. So I want to take a few of the issues perhaps off the table from the Trustee's argument.").

## IV. CONCLUSION

Orcutt's "no money down" arrangement with potential debtor clients involves the advancement of various fees that constitutes a prepetition loan. As such, each advance creates a prepetition, unsecured claim by Orcutt against his client. Such claims are not recoverable by Orcutt as administrative expenses under Section 330(a)(4)(B) and Section 503(b)(2), nor are they recoverable as administrative expenses under Section 503(b)(1)(A). Classifying such an

unsecured claim as a Section 503 administrative expense violates Section 1322(a)(3). Because Orcutt agreed to waive recovery of the fees if the Court found that he had an unsecured claim, the Court need not address the other arguments of the Bankruptcy Administrator and the Trustee.

If a debtor cannot pay the filing fee for a Chapter 13 case, Rule 1006 offers a way for the debtor to pay the filing fee over time. When necessary, the debtor can even tailor the plan to reduce the monthly plan payment until the fee is paid.

This opinion constitutes the Court's findings of fact and conclusions of law. Separate orders shall be entered pursuant to Fed. R. Bankr. P. 9021.

END OF DOCUMENT